UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANURAG SHUKLA,

                              Plaintiff,

              -v-

VIACOM INC., et al.,

                            Defendants.

18 Civ. 3522 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Anurag Shukla ("Shukla") brings this employment discrimination suit against Viacom Inc. ("Viacom Inc."); Viacom18 Media Private Ltd. ("Viacom18"); Viacom International Inc. ("Viacom International"); Indiacast US Ltd. ("Indiacast US"); Indiacast Media Distribution Private Ltd. ("Indiacast Media"); TV18 Broadcast Ltd. ("TV18"); and individuals Sameer Goswami ("Goswami") and Shalaj Dang ("Dang"). Shukla alleges that he experienced discrimination in his employment in violation of various federal and state statutes.

Pending now are two motions. First, Viacom Inc. and Viacom International (the "Viacom defendants") move to dismiss all claims against them for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Second, Indiacast US, Goswami, and Dang (the "Indiacast defendants") move to compel arbitration as to all claims against them, or, in the alternative, to dismiss nearly all such claims for failure to state a claim.[1]

---

[1] As to the remaining three defendants—Viacom18, Indiacast Media, and TV18—Shukla failed to timely serve them, and the Court denied his belated request for an extension of time to effect such service. Dkt. 55. On this basis, the Court dismisses the action as to these three defendants, without prejudice. *See* Fed. R. Civ. P. 4(m) (providing that if a defendant is not timely served, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant . . . .").

For the reasons that follow, the Court grants the Viacom defendants' motion to dismiss and grants the Indiacast defendants' motion to compel arbitration.

## I.     Background

### A.     Facts[2]

#### 1.     The Parties

Shukla, a resident of Queens, New York, is a United States citizen born in India. FAC ¶¶ 7–10. He alleges that he worked for "Defendants as a sales manager" in New York. *Id.* ¶ 20. Shukla does not specify the particular corporate entity that hired him. Rather, he alleges that he worked for all defendants "jointly and severally." *Id.* ¶ 22.

Indiacast US is a media distribution company based in Jersey City, New Jersey. It is the U.S. branch of non-defendant Indiacast Media, an India-based company. *Id.* Indiacast Media is a joint venture owned by non-defendants Viacom18 and TV18. *Id.* Viacom18, in turn, is owned by defendants Viacom Inc. and Viacom International. *Id.*

---

[2] The following account is drawn from the First Amended Complaint. Dkt. 46 ("FAC"). For purposes of resolving the motions to dismiss, the Court accepts as true all factual allegations in the FAC, drawing all reasonable inferences in Shukla's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

For the limited purpose of resolving the Indiacast defendants' motion to compel arbitration, the Court also considered the employment agreement between Indiacast US and Shukla. Dkt. 66, Ex. 1 ("Employment Agreement"). Although the agreement is neither attached to the Complaint nor referenced therein, its authenticity is not disputed. The agreement is properly considered in resolving such a motion. "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), and courts may therefore consider materials outside the complaint, *see, e.g.*, *HBC Solutions, Inc. v. Harris Corp*, No. 13 Civ. 6327 (JMF), 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).

Shukla alleges that at all relevant times, Viacom Inc., Viacom International, Viacom18, TV18, Indiacast US, and Indiacast Media "jointly and severally employed [him], and held supervisory authority over [him] with regard to his employment." *Id.* ¶ 17. Shukla refers to these entities, collectively, as the "Viacom/Indiacast Defendants," and largely attributes the actions of specific defendants to all defendants. *See, e.g.*, *id.* ¶¶ 17–20, 22, 24, 30.

Shukla alleges that defendant Goswami, a citizen of India, was the Senior Vice President for "the Viacom/Indiacast defendants" and held supervisory authority over Shukla. *Id.* ¶ 18. Goswami is identified in the FAC as the Business Head of the Americas for Viacom18. *Id.* ¶ 25. Shukla further alleges that defendant Dang, also a citizen of India, was "Head of Sales" for the "Viacom/Indiacast defendants" and held supervisory authority over Shukla. Shukla does not allege the specific corporate entity or entities for which Dang worked.

### 2. The Employment Agreement

On March 15, 2016, Shukla executed the Employment Agreement between himself and Indiacast US. That agreement includes the following relevant provision:

> [A]ny and all disputes or controversies arising out of or relating to your employment relationship, including any statutory claims under the laws of New [J]ersey or federal laws, shall be settled by arbitration to be held in New Jersey in accordance with the rules then in effect of the American Arbitration Association. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction.

Employment Agreement at 11. Shukla represented that he had "read, understood, and agree[d] to the terms set out above." *Id.* at 12.

### 3. Shukla's Allegations and Legal Claims

#### a. Factual Allegations

On March 15, 2016, Shukla "began his employment with Defendants as a sales manager in New York." *Id.* ¶ 20. Shukla asserts that he worked for all defendants "jointly and severally." *Id.* ¶ 22. Shukla sold television advertising space to clients throughout the state and spent the majority of his time working from his home in New York or driving to businesses. *Id.* ¶ 21. At Goswami's direction, he also picked up checks, in person, from New York clients. *Id.* ¶ 21.

Around June 15, 2016, Shukla asked Goswami about his work performance. Goswami replied that Shukla was "doing exceptionally well" because he was selling advertising space at high rates and was bringing in new business. *Id.* ¶ 31.

Also around June 15, 2016, Shukla requested that he be able to take a three- to four-week leave "under the FMLA and as a reasonable accommodation under the ADA" for the birth of his child, expected in September 2016. *Id.* ¶ 32. Goswami approved this request. *Id.*

Around June 28, 2016, Dang joined the "New York team of Defendants from the India office, as the head of the sales department." *Id.* ¶ 33. Shukla alleges that throughout June and July 2016, Goswami and Dang "had numerous conversations about only hiring young and beautiful women in order to increase sales." *Id.* ¶ 33. Around August 2016, Shukla alleges, "Defendants began interviewing only attractive female employees for positions in the New York office" after reviewing applicants' social media profiles. *Id.* ¶ 43.

Around July 22, 2016, Dang asked Shukla, in front of other employees, whether he knew his "Key Revenue Areas" for the following months. *Id.* ¶ 36. Shukla responded that he did. Dang then stated that Shukla should remember those figures with the same ease that he remembers when he impregnated his wife "and when the new baby is going to come." *Id.* ¶ 36.

Shukla replied, "do not bring personal stuff into this. I will complain[] about you to the labor department." *Id.* Shukla then stepped away. Shortly thereafter, Shukla received a call from Goswami telling him not to file such a complaint.

Shukla further alleges that around July 2016, Goswami and Dang "made comments about [Shukla's] 'caste' (each of the hereditary classes of Hindu society, distinguished by relative degrees of ritual purity or pollution and of social status) and said that [Shukla] is from a very small town in India, and that is why he is 'dump' and they are 'smarter than [Shukla]', because they were from Mumbai." *Id.* ¶ 37. Shukla also alleges that all defendants interfered with his work "by not approving [Shukla's] new business contracts and interfering with [Shukla's] existing contracts." *Id.* In contrast, Shukla alleges, Goswami and Dang did not make derogatory remarks about, or interfere with the contracts of, other "younger female employees," hired after Shukla, all of whom were from Mumbai. *Id.* ¶¶ 37–38.

Shukla also alleges that Dang told him "you are a U.S. citizen, for you it is very easy to find a job. You can find a job anywhere in America." *Id.* ¶ 44. Dang also allegedly contrasted Shukla's position as a U.S. citizen with the position of non-citizens, saying that, "[Shukla is] eligible for unemployment and food stamps, but the Indian employees cannot [apply]." *Id.*

At some unspecified point, Shukla complained about these comments. *Id.* ¶ 41. At that point, "Defendants retaliated against [him] by interfering with [his] business contracts, such as not running advertisements [Shukla] had sold . . . , refusing to approve [Shukla's] expenses, and harassing [Shukla] at all hours of the night." *Id.* As a result of this interference, Shukla alleges, his business reputation with clients suffered. *Id.* ¶ 42.

Around October 2016, Shukla complained about this allegedly discriminatory conduct to "Defendants' Human Resources Department . . . but no corrective action was ever taken." *Id.*

¶ 46. Around that same time, Goswami allegedly told Shukla, "[Y]ou don't have to come to work from tomorrow, we are hiring young beautiful females with more energy who will bring us more revenue." *Id.* ¶ 47. Goswami allegedly added, that "young females can do this job better," and "[i]f you ever tell anyone what you saw here, I will mess up your reference and you will never ever find a job again." *Id.*

Thereafter, Shukla was terminated. After he was terminated, he alleges, "Defendants . . . hired an attractive much younger female employee from Mumbai[,] India who was not a U.S. citizen, to take over [Shukla's] position." *Id.* ¶ 48.

### b.    Legal Claims

Based on these allegations, Shukla claims that he was discriminated against, and experienced retaliation, on the basis of his race, national origin, citizenship, sex, gender, and age; that he suffered discrimination for requesting family leave; and that he experienced sexual harassment and a hostile work environment. *Id.* ¶ 49. He further alleges that he was retaliated against and wrongfully terminated as a result of his complaints of discriminatory conduct.

He brings the following 18 counts:

(1) Counts 1 and 2:  Discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), against all corporate defendants;

(2) Count 3:  Discrimination and retaliation in violation of 42 U.S.C. § 1981, against all defendants;

(3) Counts 4 and 5:  Violations, retaliation, and interference in violations of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), against all corporate defendants;

(4) Counts 6 and 7: Discrimination and retaliation in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), against all corporate defendants;

(5) Counts 8 through 10: Discrimination and retaliation in violation of the New York Human Rights Law ("NYHRL"), against all defendants;

(6) Counts 11 through 15: Discrimination in violation of the New York City Human Rights Law ("NYCHRL"), against all defendants;

(7) Counts 16 through 18: Discrimination, retaliation, and aiding and abetting such conduct in violation of New Jersey law, against all defendants.

*Id.* ¶¶ 58–121.

### 4.     Procedural History

On April 20, 2018, Shukla filed his initial Complaint. Dkt. 1. On July 30, 2018, after a series of extensions, Viacom Inc. and Viacom International moved to dismiss. Dkt. 28. On July 31, Indiacast US, Indiacast Media, Dang and Goswami also moved to dismiss. Dkt. 30. On August 1, 2018, the Court ordered Shukla to file any amended complaint by August 21, 2018. The Court advised Shukla that no further opportunities to amend would ordinarily be granted. Dkt. 32. On September 7, 2018, after receiving an extension, Shukla filed the FAC. Dkt. 46.

On September 23, 2018, Shukla requested an extension of time to serve the FAC on defendants Viacom18, TV18, and Indiacast Media. Dkt. 51. Shukla noted that these entities were based in India, had not been served, and the deadline to serve them had been July 19, 2018. On October 2, 2018, the Court denied that request, explaining that Shukla was previously on notice that Viacom18, TV18, and Indiacast Media were based in India and had not been served, and that Shukla failed to provide any justification for his failure to timely effect service. Dkt. 55.

On October 12, 2018, the Viacom defendants moved to dismiss the FAC. Dkt. 58. On November 8, 2018, the Indiacast defendants moved to dismiss Counts 1 through 15 of the FAC, or, alternatively, to compel arbitration as to all claims. Dkt. 64. On November 9, 2018, Shukla filed his opposition to both motions. Dkts. 69–70. On November 30, 2018, the Viacom and Indiacast defendants filed replies in support of their respective motions. Dkts. 73–74.

On December 17, 2018, the Court held an initial pretrial conference and, later that day, issued an order staying all discovery pending resolution of defendants' motions. Dkt. 77.

## II.     Applicable Legal Standards

### A.     Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145 (2d Cir. 2012). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**B.      Motions to Compel Arbitration**

The Federal Arbitration Act ("FAA") governs whether the Court must compel arbitration. *See* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . "). "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, according to their terms." *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999) (internal quotation marks omitted).

Well-established federal public policy strongly favors arbitration as an "alternative means of dispute resolution." *Id.* at 294. Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quotation marks omitted).

That said, a party may only be required to submit to arbitration a dispute that it has agreed to arbitrate. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). Federal law "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA authorizes the Court to compel arbitration if the parties have entered into an agreement to arbitrate and one party refuses to honor that agreement. *See PaineWebber*, 81 F.3d at 1198; *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 503–04 (S.D.N.Y. 2009).

### III. Discussion

The Viacom defendants move to dismiss all claims against them for failure to state a claim, principally on the ground that the FAC does not adequately allege that they were Shukla's employer or had any decision-making authority with respect to his employment. The Indiacast defendants move to compel arbitration, or, alternatively, to dismiss Counts One through Fifteen of the FAC for failure to state a claim. The Court discusses the motions of each defendant group in turn.

#### A. The Viacom Defendants' Motion to Dismiss

The Viacom defendants argue that the FAC's claims are all deficient for failure to allege facts indicating that the Viacom defendants were Shukla's employers. Shukla counters that while the Indiacast defendants were Shukla's immediate employers, they and the Viacom defendants operated as single entity.

Relevant here, the FAC does not specify the precise corporate entity that employed Shukla, but it appears to indicate that Shukla formally worked for Indiacast US.[3] FAC ¶ 23. Indiacast US is the U.S. branch of non-defendant Indiacast Media, an India-based company. As alleged, Indiacast Media is jointly owned by non-defendants Viacom18 and TV18.[4] *Id.* Viacom Inc. and Viacom International—the Viacom defendants—are alleged to have an unspecified ownership interest in Viacom18. *Id.*

---

[3] This allegation accords with the Employment Agreement, which identifies Indiacast US as Shukla's employer.

[4] As noted, the Court is dismissing defendants Indiacast Media, Viacom18, and TV18 from this action for lack of timely service pursuant to Fed. R. Civ. P. 4.

For the reasons that follow, the Court discusses each of Shukla's surviving claims against the Viacom defendants.[5]

1. **Counts 1 to 3 and 8 to 15: Title VII, Section 1981, NYHRL, and NYCHRL Claims**

The Court first considers Shukla's claims for violations of Title VII, § 1981, the NYHRL, and the NYCHRL. Under Title VII, a parent company is considered an "employer" of its subsidiary's employees only when the parent and subsidiary represent a single, integrated enterprise. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995). The same standard applies under Section 1981, the NYHRL, and the NYCHRL. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (identical standards apply to Title VII, NYHRL and NYCHRL claims); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (identical standards in Title VII and § 1981 claims in employment discrimination actions). To establish such an integrated enterprise and impose liability on the parent, a plaintiff must allege facts sufficient to establish an interrelationship between the parent and the subsidiary, considering the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at 1240 (internal quotation marks omitted).

"Although no one factor is determinative . . . control of labor relations is the central concern." *Brown v. Daikin America Inc.*, 756 F.3d 219, 227 (2d Cir. 2014) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). "Centralized control of labor relations includes 'tasks such as handling job applications, approving personnel status reports, and exercising veto power

---

[5] In his brief in opposition to the Viacom defendants' motion, Shukla voluntarily dismissed Counts 16 through 18—alleging breaches of New Jersey law—against these defendants. Dkt. 69 at 14. The ensuing analysis therefore addresses only Counts 1 through 15.

over major employment decisions.'" *Geraci v. Restaurant at Apple Greens, Inc.*, No. 16 Civ. 1385 (BKS/DJS), 2019 WL 1386318, at *15 (N.D.N.Y. Mar. 27, 2019) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); *see also Laurin v. Pokoik*, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004) ("Centralized control over labor relations, the most important prong in the single-employer inquiry, can include such factors as whether the companies have separate human resources departments and whether the entity establishes its own policies and makes its own decisions as to hiring, discipline, and termination of its employees." (internal quotation marks omitted)).

Here, in an effort to plead that the Viacom defendants operated as a single employer with Indiacast US, Shukla alleges that the Board of Directors of non-defendant Indiacast Media (the India-based parent company of Indiacast US) included three individuals who also held high-level executive positions at Viacom Inc. and/or Viacom International. FAC ¶ 23. He further alleges that, when he interviewed for his position at Indiacast US, he communicated with an employee at an email address indicating that she was a Viacom18 employee, *id.* ¶ 24; that defendant Goswami communicated via a Viacom18 email address, *id.* ¶ 25; and that senior managers at Indiacast Media traveled to Viacom Inc. headquarters twice a year for senior management meetings, *id.* ¶ 26. In addition, Shukla alleges, the official email signature of Indiacast US states that the contents of the email "may not necessarily represent the views or policies of Viacom18 Media Pvt. Ltd." *Id.* ¶ 28. Finally, Indiacast US employed an individual, identified in the FAC only as "Yogesh," who was also listed as an employee of Viacom18, *id.* ¶ 27, and, to enable Indiacast US to obtain a visa for Yogesh, Indiacast US allegedly "submitted documentation indicating that Yogesh was an employee of Viacom," *id.*

This smattering of allegations falls well short of making Viacom Inc. or Viacom International Shukla's employers under Title VII, § 1981, the NYHRL, or the NYCHRL. Shukla's FAC is, tellingly, devoid of factual allegations supporting that Viacom Inc. or Viacom International were involved in Viacom's labor relations, human resources policies, or hiring decisions. Indeed, the FAC scarcely mentions the Viacom defendants at all.

To be sure, the FAC alleges some interrelationship between Indiacast US and non-defendants Indiacast Media and Viacom18. It states, for instance, that Shukla communicated with Viacom18 employees during the hiring process, and that the Indiacast US signature block identified Indiacast US as a Viacom18 entity. But these allegations do not establish that *Viacom Inc.* and *Viacom International*—entirely separate corporate entities from Viacom18 or Indiacast Media—were connected to, let alone oversaw, Shukla's employment. And while the FAC alleges that high-level executives of Viacom Inc. and/or Viacom International served on the Board of Directors of Indiacast Media, it does not allege that the Indiacast Media Board had any control over labor matters for Indiacast US, the entity by which Shukla was employed. Nor does the FAC allege that these executives made any decisions regarding employment matters at Indiacast US.

The FAC does allege that Indiacast US represented that one of its employees was an employee of "Viacom" in order to obtain a work visa for that employee. But the FAC leaves unspecified whether this reference is to either Viacom Inc. or Viacom International, which are defendants in this action, or Viacom18, which is not. And even taking the general reference to "Viacom" to implicate specifically the Viacom defendants, that allegation is not enough to support the necessary conclusion: that the Viacom defendants possessed "actual power to control the workers in question." The allegation about the visa application of one Indiacast US

employee is far too slender to support the conclusion that Viacom had general control over Indiacast US's employment practices, such as the power to hire and fire Indiacast US employees, supervise them, set employee rates of pay, or maintain employee records. *See Draskovic v. Oneota Assocs., LLC*, No. 17 Civ. 5085 (ARR), 2019 WL 783033, at *7 (E.D.N.Y. Feb. 21, 2019) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

In sum, the FAC does not allege facts sufficient to support that the Viacom defendants were Shukla's employer under Title VII, § 1981, or the NYHRL and the NYCHRL. The Court therefore dismisses Counts 1 through 3 and Counts 8 through 15 against Viacom Inc. and Viacom International.

### 2. Counts 4 to 5: FMLA Claims

For similar reasons, Shukla's FMLA claims against the Viacom defendants fail as well. The FMLA grants eligible employees the right to take up to 12 work weeks per year of unpaid leave due to a serious health condition that prevents them from performing their work functions. 29 U.S.C. § 2612(a)(1). It provides that the employee has the right to return to a prior position or an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). The FMLA "'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of FMLA rights.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161 (2d Cir. 2006) (quoting *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003)).

The FMLA's private right of action, however, is only against an employer. To make out a *prima facie* claim under the FMLA, Shukla must plead facts plausibly alleging that the Viacom defendants were his employers under the FMLA. *See Emmons v. City Univ. of New York*, 715 F.

Supp. 2d 394, 417 (E.D.N.Y. 2010). Under the FMLA, the legal entity that employs the employee—here, Indiacast US—is deemed to be the employer. 29 C.F.R. § 825.104(c). Corporate entities with an ownership interest in the immediate employer are considered "separate employer[s]" unless they meet the "integrated employer test" or the "joint employment test." 29 C.F.R. § 825.104(c)(1).

The "integrated employer test" is identical to the test discussed above in the context of Title VII. Under this test, courts consider: (1) common management; (2) interrelation between operations; (3) centralized control of labor; and (4) the degree of common ownership and/or financial control. 29 C.F.R. § 825.104(c)(2)(i)–(iv). Because the "integrated employer test" in the context of the FMLA tracks the test used in the Title VII context, the Court's analysis and outcome is the same as above, *i.e.*, that the FAC does not plead such a claim.

Using the alternative "joint employer test," courts first ask "[w]hether the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek." 29 C.F.R. § 825.106. If so, "a joint employment relationship generally will be considered to exist" in cases where (1) "there is an arrangement between employers to share an employee's services or to interchange employees"; (2) "one employer acts directly or indirectly in the interest of the other employer in relation to the employee"; or (3) "the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer." *Id.* "As with determinations of integrated employer status, the joint employer determination does not depend on any single criterion, but rather on the totality of the entire

relationship between the purported joint employers." *Rokuson v. Century Empire Szechuan Restaurant Inc.*, No. 12 Civ. 1615, 2015 WL 1542350, at *6 (E.D.N.Y. Mar. 31, 2015).

It is unclear whether the joint employer test applies here. The FAC does not allege that Shukla worked for multiple employers "at different times during the workweek." Nor does it allege that his work "simultaneously benefit[ted]" both Indiacast US and the Viacom defendants. But even assuming that Shukla's work for Indiacast US benefitted the Viacom defendants higher up the corporate ladder such that the joint employer test could implicated, that test ultimately does not avail Shukla. The FAC does not allege any facts to support the existence of an arrangement between the Viacom defendants and Indiacast US to share his services. Nor does it allege that Indiacast US acted, directly or indirectly, in the interest of either of the Viacom defendants "in relation" to Shukla's employment. And, as noted above, the FAC does not allege facts sufficient to conclude that the Viacom defendants "control" Indiacast US on employment matters. It does not allege, for instance, that the Viacom defendants set pay rates for Indiacast US employees, directed Indiacast US's hiring or firing practices, or otherwise had any control over Indiacast US's employment practices.

The Court therefore holds that, on the facts pled, the Viacom defendants do not qualify as Shukla's employers for purposes of his FMLA claims. Therefore, his FMLA claims against the Viacom defendants must also be dismissed.

### 3. Counts 6 to 7: ADA Claims

Shukla alleges that he asked to take "three to four weeks off . . . as a reasonable accommodation under the ADA, in September 2016 for the birth of his child, as [Shukla's] wife was expecting a baby and was due in September 2016." FAC ¶ 32. Shukla alleges that the

Viacom defendants violated the ADA by discriminating against him "because of his association with a person with a disability . . . ." *Id.* ¶ 83.

To make out a *prima facie* case of disability discrimination, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *See Morris v. Town of Islip*, No. 12 Civ. 2984 (JFB) (SIL), 2014 WL 4700227, at *8 (E.D.N.Y. Sept. 22, 2014); *see also Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir. 1998)).

At the outset, Shukla's ADA claim against the Viacom defendants suffers from the same defect as his other claims. "An employer-employee relationship is a required element of an employment discrimination claim under the ADA." *Christiansen v. Omnicom Gr., Inc.*, 167 F. Supp. 3d 598, 608 (S.D.N.Y. 2016), *rev'd on other grounds*, 852 F.3d 195 (2d Cir. 2017). Under the ADA, as under Title VII, "a joint employer relationship may be found to exist where there is sufficient evidence that the defendant had immediate control over the other company's employees. Relevant factors include the commonality of hiring, firing, discipline, pay insurance, records and supervision." *Valentine v. Brain & Spine Surgeons of N.Y., P.C.*, No. 17 Civ. 2275 (NSR), 2018 WL 1871175, at *4 (S.D.N.Y. April 16, 2018) (internal quotation marks omitted). For the reasons reviewed above, Shukla's FAC does not allege facts sufficient to conclude that either Viacom defendant was his employer.

Shukla's ADA claim fails for two additional reasons. First, Shukla does not allege that he has a disability within the meaning of the ADA. Rather, he alleges discrimination based on

his "association" with someone with a purported disability: his pregnant wife. Second, "[p]regnancy does not typically constitute a disability under the ADA." *Sam-Sekur v. Whitmore Gr., Ltd.*, No. 11 Civ. 4938 (JFB), 2012 WL 2244325, at *7 (E.D.N.Y. June 15, 2012). *See also Leahy v. Gap, Inc.*, No. 07 Civ. 2008, 2008 WL 2946007, at *5 (E.D.N.Y. July 29, 2008) ("'Every court to consider the question of whether a pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not.'" (quoting *Green v. New York City Health & Hosp. Corp.*, 04 Civ. 5144 (PAC), 2008 WL 144828, at *5 (S.D.N.Y. Jan. 15, 2008))); *Minott v. Port Auth. Of N.Y. & N.J.*, 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000) (collecting cases). "Only in extremely rare cases have courts found that conditions that arise out of pregnancy qualifies as a disability." *Sam-Sekur*, 2012 WL 2244325, at *8. Because Shukla does not allege that he is disabled within the meaning of the ADA, his claims against the Viacom defendants must be dismissed.

The Court has dismissed Counts 1 through 14 of the FAC, and Shukla has voluntarily dismissed his remaining claims, under New Jersey law, against the Viacom defendants. *See* Dkt. 69 at 14. Accordingly, the Court grants the Viacom defendants' motion to dismiss in its entirety.

### B. The Indiacast Defendants' Motion to Dismiss or to Compel Arbitration

The Court now takes up the Indiacast defendants' motions. These seek, alternatively, to dismiss the first 15 counts in the FAC for failure to state a claim, or to compel arbitration of all of Shukla's claims, on the ground that Shukla entered into a binding arbitration agreement that precludes bringing his claims in this forum.

The Court addresses the motion to compel arbitration first. That is because arbitrability is a "gateway" issue and the court "should address the arbitrability of the plaintiff's claim at the outset of the litigation." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016).

Therefore, after a motion to compel arbitration has been filed, a court must "refrain from further action" until it determines arbitrability. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citation omitted).

The Indiacast defendants argue that the Employment Agreement requires Shukla to arbitrate any claims "arising out of or in relation to" Shukla's employment with Indiacast US, Employment Agreement at 11, such that the Court should enter an order compelling arbitration. Shukla responds that the arbitration provision is unenforceable for lack of mutual assent.

Where a party moves to enforce an arbitration agreement, "the first task of a court . . . is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Where all of a plaintiff's claims are arbitrable, the court may dismiss the entire action. *Seuz v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998). State law principles of contract law guide the inquiry into whether the parties entered in a valid arbitration agreement. *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 86 (2002). Here, consistent with the agreement between Shukla and Indiacast US, the laws of New Jersey govern that inquiry. *See* Employment Agreement at 11.

For a valid contract to exist under New Jersey law, a party must show "mutual assent, consideration, legality of the object of the contract, capacity of the parties and formulation of memorialization." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Cohn v. Fisher*, 118 N.J. Super. 286, 291 (Law Div. 1972)). The element of mutual assent "requires that the parties understand the terms of their agreement." *Barr v. Bishop Rosen & Co., Inc.*, 442 N.J. Super. 599, 606 (2015 App. Div.). In the context of an arbitration agreement, "[a]lthough an arbitration clause need not identify the specific constitutional or statutory right guaranteeing a citizen's access to the courts that are being

waived, it must at least in some general and sufficiently broad way convey that parties are giving

up their right to bring their claims in court or have a jury resolve their dispute." *Id.* Further, "[i]t

is firmly established in [New Jersey] that 'because of the favored status afforded to arbitration,

an agreement to arbitrate should be read liberally in favor of arbitration.'" *Griffin v. Burlington*

*Volkswagen, Inc.*, 411 N.J. Super. 515, 518 (Law Div. 2010) (quoting *Garfinkel v. Morristown*

*Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 132 (2001) (internal alterations omitted)).

The language of the arbitration provision of the Employment Agreement is unambiguous.

It provides that

> any and all disputes or controversies arising out of or relating to your employment
> relationship, including any statutory claims under the laws of New [J]ersey or
> federal laws, shall be settled by arbitration to be held in New Jersey in accordance
> with the rules then in effect of the American Arbitration Association. The decision
> of the arbitrator shall be final, conclusive and binding on the parties to the
> arbitration. Judgment may be entered on the arbitrator's decision in any court
> having jurisdiction.

Employment Agreement at 11. As the Indiacast defendants argue, the scope of this language is

expansive. "Courts have generally read the terms 'arising out of' or 'relating to' a contract as

indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the

contract." *Griffin*, 411 N.J. Super. at 518. Arbitration clauses that use such expansive language

"are construed to require arbitration of statutory claims such as alleged civil rights violations and

common law torts." *Id.* at 519. This is true even if a plaintiff asserts claims against individuals

who are not signatories to the arbitration agreement, as Shukla does here. *See Tracinda Corp. v.*

*DaimlerChrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007) ("If appellant can avoid the practical

consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his

complaint, the effect of the rule requiring arbitration would, in effect, be nullified." (internal

quotation marks and alterations omitted)); *Trott v. Paciolla*, 748 F. Supp. 305, 309 (E.D. Pa.

1990) ("Courts have often held non-signatories to be bound by arbitration agreements" because corporate entities "can only act through [their] employees and an arbitration agreement would be of little practical value of it did not extend to employees"). It is, therefore, clear that all of Shukla's claims, which arise under federal or state statutes, fall within the scope of the broad arbitration provision of Shukla's Employment Agreement.

Seeking to neutralize this broad assent to arbitration, Shukla argues that the arbitration provision is unenforceable under New Jersey law for lack of mutual asset. He cites *Atalese v. U.S. Legal Servs. Gr., L.P.*, 219 N.J. 430, 447 (2014), in which the New Jersey Supreme Court held unenforceable an arbitration provision that did not explain, "in some general and sufficiently broad way," how arbitration affected the plaintiff's legal rights. Although the provision in *Atalese* stated that "any claim or dispute" would be subject to arbitration, the state court held the provision was too unclear to be enforceable because it did not alert the plaintiff that she was waiving her right to seek judicial relief "for a breach of her statutory rights." *Id.* at 446.

Shukla's reliance on *Atalese* is misplaced. The arbitration provision in Shukla's Employment Agreement, unlike the provision at issue in *Atalese*, specifically advises that all disputes, "including *any statutory claims under the laws of New [J]ersey of federal laws*" must be settled by an arbitrator. Employment Agreement at 11 (emphasis added). As New Jersey courts have recognized, this difference in language is significant. The language at issue in the *Atalese* arbitration provision—"any claim or dispute"—"suggest[s] that the parties intend to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." *Garfinkel*, 168 N.J. at 672. The express reference to "statutory claims" under state or federal in Shukla's employment agreement, in contrast, drives home that

arbitration will be the sole recourse to vindicate "a breach of h[is] statutory rights." *Atalese*, 219 N.J. at 446. Moreover, the arbitration provision to which Shukla bound himself makes clear that arbitration will be "final, conclusive, and binding on the parties." Employment Agreement at 11. *See Columbus Circle NJ LLC v. Island Construction Co., LLC*, No. A-1907-15T1, 2017 WL 958489, at *5 (N.J. App. Div. Mar. 13, 2017) (holding arbitration provision valid and emphasizing that provision stated that any award was "binding or final" and judicially enforceable); *Garfinkel*, 168 N.J. at 135 ("The better course would be the use of language reflecting that . . . [judicial] remedies are forever precluded . . . ."); *cf. Barr*, 442 N.J. Super. at 607–08 (finding unenforceable arbitration clause that did not advise that arbitration was binding or final).

To the extent that Shukla argues that the arbitration provision is unenforceable because he did not subjectively understand the rights he was waiving, that argument, too, is unavailing. It is well established that a party's subjective understanding or intent has no bearing on the interpretation of a contract. *Garfinkel*, 168 N.J. at 135 ("In interpreting a contract, it is not the real intent but the intent expressed or apparent in the writing that controls." (internal quotation marks and alterations omitted)); *CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC*, 410 N.J. Super. 114, 120 (App. Div. 2009) ("Absent ambiguity, the intention of the parties is to be ascertained by the language of the contract. If the language is plain and capable of legal construction, the language alone must determine the agreement's force and effect." (internal quotation marks and citations omitted)).

The Court therefore grants the Indiacast defendants' motion to compel arbitration. The Court does not go further and pointedly does not address these defendants' motion to dismiss for failure to state a claim. That is because, in deciding a motion to compel arbitration, the Court "is

strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

A final question as to the motion to compel arbitration is whether to dismiss this action in light of the binding arbitration agreement, or to stay these proceedings pending arbitration. The Second Circuit instructs that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). The Indiacast defendants seek dismissal, and Shukla does not request a stay. Nonetheless, a stay will expedite this case by enabling prompt arbitral resolution of Shukla's claims and deferring any appellate review until after the arbitration has concluded. Accordingly, the Court stays this case pending arbitration.

### C. Unserved Defendants

As noted above, three defendants named in this action—Viacom18, Indiacast International, and TV18—were not timely served. Accordingly, the Court dismisses those defendants from this action and respectfully directs the Clerk of Court to remove those defendants from the caption of this case. *See* Fed. R. Civ. P 4(m) (if a defendant is not timely served, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . .")

### CONCLUSION

For the reasons stated above, the Court dismisses Viacom18 Media Private Limited, TV18 Broadcast Limited, and Indiacast Media Distribution Private Limited from this action for lack of timely service.

The Court grants the Viacom defendants' motion to dismiss the claims against them in full. Consistent with the Court's August 1, 2018 order, which directed Shukla to file any amended complaint and advised that "[n]o further opportunities to amend will ordinarily be granted," Dkt. 32, such dismissal is with prejudice.

Finally, the Court grants the Indiacast defendants' motion to compel arbitration and stays the action pending the outcome of arbitration. The parties are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising the Court as to the status of the arbitration proceedings.

The Court respectfully directs the Clerk of Court to terminate the motions pending at docket entries 58 and 64 and to terminate defendants Viacom Inc., Viacom International Inc., Indiacast Media Distribution Private Limited, Viacom18 Media Private Limited, and TV18 Broadcast Limited from this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 1, 2019
New York, New York